UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ARMANDO CLEMENTE
ROSABAL BLANCO,

        Petitioner,

    v.                       Case No.:  2:26-cv-00051-SPC-DNF

PAMELA BONDI *et al.*,

        Respondents,

_____/

## OPINION AND ORDER

Before the Court are Armando Clemente Rosabal Blanco's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 7), and Rosabal Blanco's reply (Doc. 8).  For the below reasons, the Court grants the petition.

### A. Background

Rosabal Blanco is a native and citizen of Cuba who entered the country on August 17, 2022.  Immigration officials detained Rosabal Blanco, commenced removal proceedings by issuing a notice to appear, and released him from custody.  Rosabal Blanco has since applied for asylum and withholding of removal.  He has no criminal history, and he has attended his scheduled hearings.  On October 8, 2025, Rosabal Blanco appeared at a Miami immigration court for a hearing.  The Department of Homeland Security

("DHS") moved to dismiss the removal proceeding, and the immigration judge granted the request. DHS intended to designate Rosabal Blanco for expedited removal, but it has not yet done so.

Immigration and Customs Enforcement ("ICE") agents arrested Rosabal Blanco after he exited the courtroom and detained him at Glades County Detention Center. Rosabal Blanco timely appealed the immigration court's dismissal of his removal proceeding, and the appeal is pending before the Board of Immigration Appeals. He requested a custody redetermination hearing on December 22, 2025, but the immigration court found it lacked jurisdiction to consider release on bond. Rosabal Blanco claims his detention violates the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA") and related regulations, and the Administrative Procedures Act ("APA").

### B. Legal Framework for Expedited Removal

The INA establishes two procedures for removing noncitizens from the country. The first process—sometimes called a section 240 proceeding—begins when DHS issues the noncitizen a notice to appear ("NTA"). It involves an evidentiary hearing before an immigration judge, and it provides the noncitizen an opportunity to apply for asylum. Noncitizens seeking asylum are entitled to due process under the Fifth Amendment. DHS may release the noncitizen into the country on parole while the process plays out, but only if

the noncitizen demonstrates "that the release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceedings." 8 C.F.R. § 1236.1(c)(8).

Expedited removal is the second process. It allows immigration officers to remove noncitizens "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability in two ways. First, noncitizens may be eligible for expedited removal "only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission." *Coalition for Humane Immigrant Rights v. Noem*, --- F. Supp. ---, ---, 2025 WL 2192986, at *5 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)). "Among that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(iii)).

On January 23, 2025, Acting DHS Secretary Benjamine Huffman issued a memorandum instructing immigration officials to consider the expedited removal of "any alien DHS is aware of who is amenable to expedited removal

but to whom expedited removal has not been applied[.]"  Benjamine C. Huffman, Acting DHS Secretary, *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025).  The next day, DHS published a notice expanding the application of expedited removal.  Office of the Secretary, DHS, *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139.

In its implementation of the new policy, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief." *Make the Road New York v. Noem*, --- F. Supp. 3d ---, ---, 2025 WL 2494908, at *5 (D.D.C. 2025).  The D.C. District Court described a common pattern:

> [W]ith DHS first moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in section 240 proceedings.

*Id.*

## C. Jurisdiction

The government argues three provisions of the INA strip the Court of jurisdiction over Rosabal Blanco's claims—8 U.S.C. §§ 1252(a)(2)(A), 1252(e)(3), and 1252(g).  § 1252(a)(2)(A) bars courts from hearing certain claims relating to expedited removal.  It states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision,

and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—(i)…any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title, (ii)…a decision by the Attorney General to invoke the provisions of such section, (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or (iv)…procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A).  This section does not apply here because DHS has not invoked expedited removal against Rosabal Blanco.

§ 1252(e)(3) authorizes certain challenges to the validity § 1225(b)'s system for inspecting and removing arriving noncitizens.  It is limited to constitutional challenges to § 1225(b) and implementing regulations, and to claims that implementing regulations and other policy documents are inconsistent with or otherwise violate the INA and or other laws.  Such claims must be brought in the District Court for the District of Columbia.  Rosabal Blanco is challenging the legal basis of his detention, not the validity of § 1225(b) or implementing policies.  Thus, he need not file this action in the District of Columbia.

Finally, the respondents raise the INA's "zipper clause," which states:

Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings,

> adjudicate cases, or execute removal orders against any
> alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

Rosabal Blanco is not asking for review of an order of removal or the process by which his removability will be determined. In fact, there is no removal order to review. Rather, Rosabal Blanco challenges the legal basis for his detention. The zipper clause does not apply. *See Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [Section 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not

6

proscribe substantive review of the underlying legal bases for those discretionary decisions and actions.").

### D. Due Process

The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts looks to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Rosabal Blanco's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. When DHS detained Rosabal Blanco in 2022, a border patrol agent found him eligible for release pending his immigration hearing. (Doc. 1-13). Rosabal Blanco has no criminal history and has attended all scheduled immigration hearings.

Respondents assert ICE is detaining Rosabal Blanco under § 1225(b)(1), not § 1225(b)(2) or § 1226(a). A noncitizen subject to expedited removal under § 1225(b)(1) is subject to mandatory detention. But ICE has not issued an expedited removal order here. Thus, this case is slightly different than the common pattern described by the D.C. District Court in *Make the Road New York*, *supra*. Rosabal Blanco does not even have access to the limited due process protections available in expedited removal proceedings.[1] The Court recognizes significant value in the safeguards ICE is attempting to circumvent by dismissing his removal proceeding. Those safeguards ensure immigration detention serves its statutory purposes.

---

[1] The respondents claim Rosabal Blanco had an opportunity to be heard when the immigration court dismissed his section 240 proceeding, but that is not true. It is clear from the written order that the immigration judge only considered whether dismissal was appropriate. Rosabal Blanco did not have an opportunity to contest his subsequent detention. (*See* Doc. 1-10).

Third, the government has not established any legitimate interest in Rosabal Blanco's continued detention. Immigration detention has two statutory goals: to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690. Rosabal Blanco's detention serves neither purpose. The immigration official who considered his circumstances in 2022 found he should be paroled on recognizance, and he has since stayed out of trouble, applied for asylum, and participated in his removal proceedings. Rosabal Blanco's appeal of the dismissal of his section 240 case is the only proceeding currently pending, and the respondents have not demonstrated any need to detain him to ensure his participation in that appeal.

While the parties agree that ICE intends to initiate expedited removal proceedings in the future, it appears Rosabal Blanco is ineligible for expedited removal because he has remained in the country since his parole more than two years ago. *See* 8 U.S.C. § 1225(b)(1)(iii). The procedure employed by ICE has not afforded Rosabal Blanco an opportunity to be heard on that issue. The Court finds that ICE violated Rosabal Blanco's right to due process by detaining him without reasonable notice or an opportunity to be heard. *See United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error" (cleaned up)).

Accordingly, it is hereby

**ORDERED**:

Armando Clemente Rosabal Blanco's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

(1)    The respondents shall release Rosabal Blanco from custody within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

(2)    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on January 28, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1